Samuel G. KOORITZKY, Plaintiff,

v.

Alexis M. HERMAN, Secretary of Labor, Defendant.

Civil Action No. 91–3011–LFO.

United States District Court, District of Columbia.

May 7, 1998.

Christopher A. Teras, Jaeger & Teras, Washington, DC, for Plaintiff.

Samuel Kooritzky, Kooritzky & Associates, Arlington, VA, Pro se.

Michael Joseph Ryan, U.S. Attorney's Office, Washington, DC, for Defendant.

### MEMORANDUM

OBERDORFER, District Judge.

A Memorandum and Order of December 17, 1997 resolved the majority of issues in plaintiff's long-pending fee application, and invited the parties to provide further information pertaining to the single outstanding issue—compensation for services provided by paralegal James Moore. Defendant filed a Response on January 14, 1998, and plaintiff filed a supplemental Submission on February 4, 1998. On February 16, 1998, plaintiff filed a "Motion for Reconsideration of Certain Limited Aspects of the Court's Orders of December 17, 1997 and January 30, 1998."

Defendant opposed this motion on February 27, 1998. For reasons stated herein, plaintiff is entitled to $25,441.50 for services rendered by James Moore. Plaintiff's motion for reconsideration is denied, except that plaintiff will be compensated for an additional 35 hours of work performed in 1992.

I.

A.

Plaintiff moves for reconsideration of four previously decided issues. First, plaintiff argues that, contrary to the Order of January 30, 1998, he should now be permitted to supplement his fee request with claims for hours worked in the years 1995 and 1996, i.e. two to three years ago. Plaintiff faults the Court for not previously specifying a deadline for filing any supplemental petitions. However, the Court had no reason to establish such a deadline, where plaintiff gave no indication—in over eighteen filings, two motions hearings, and seven days of evidentiary hearings that have occurred since he last supplemented his fee request on December 13, 1995—that he intended to file any further supplements. While plaintiff argues that there is no firm "rule" that specifies when a supplement to a fee request is to be submitted, the fee petition process is certainly governed by a rule of reasonableness. For reasons stated in the January 30, 1998 Memorandum and in Defendant's Opposition to the motion for reconsideration, plaintiff's request will be denied.

Second, plaintiff requests that he be allowed to petition for fees based on the time expended in conjunction with the evidentiary hearings before Magistrate Judge Kay in 1997. For reasons stated in the January 30, 1998 Memorandum, that request will also be denied.

Third, plaintiff states that the December 17, 1997 Memorandum incorrectly denied plaintiff's request for attorney hours expended on the defendant's motion for summary affirmance. Defendant concurs that, in fact, plaintiff prevailed on the motion for summary affirmance. *See* Defendant's Oppos. at 4. Accordingly, the hours granted in the De-

cember 17, 1997 Memorandum are amended as follows:

*9/21/92—9/22/92.* Granted: 5 hours. To the extent that this task included both reading defendant's motion for summary affirmance, and researching ("understanding") the standards for granting such a motion, five hours could reasonably have been expended on this activity.

*9/22/92—9/27/92, 9/29/92—10/5/92.* Granted: 30 hours. In light of the fact that plaintiff had lost on summary judgment in the District Court, and that the summary affirmance motion could be dispositive of his claim in the Court of Appeals, thirty hours is a reasonable period of time for plaintiff to have expended on drafting his opposition.

In sum, plaintiff will be compensated for an additional 35 hours of work performed in 1992.

Finally, plaintiff requests reconsideration of the fees granted for work performed by attorney Christopher Teras. Plaintiff's counsel states that he "can find no evidence that he [Teras] recorded more than 24 attorney hours for a day as suggested" in the December 17 Memorandum. Plaintiff's attention is directed to pages 71 through 72 of the transcript of the January 24, 1997 hearing, and to the underlying documents discussed therein. More importantly, plaintiff's attention is again directed to pages 65 through 79 of the same transcript, which suggest that the hours claimed by Teras were based on speculative, retrospective estimates. Plaintiff also suggests that it is inconsistent to reduce the hours billed by Teras in 1995, the year in which he began to keep contemporaneous time records, but grant 100% of the hours billed by attorney Sean Purcell in the same year. Purcell did not become involved in plaintiff's case until June of 1995. *See* Feb. 19, 1997 Tr. at 36. The work he performed was straightforward legal work pertaining to plaintiff's attorneys' fee petition. *Id.* at 40. By contrast, a certain percentage of the work performed by Teras on plaintiff's fee petition in 1995 must be attributed to the need to calculate, recalculate, and explain his own hours as claimed in the fee petition, a task which would have been unnecessary but for

his failure to keep accurate records of his time prior to 1995. In this sense, Teras is similarly situated not to Purcell, but to plaintiff Kooritzky. *See* December 17, 1997 Memorandum at 15. Moreover, as stated in the December 17 Memorandum, the reduction in hours claimed by Teras also reflects a concern about duplicative billing (i.e. for work identical to that performed by Kooritzky) that does not apply to Purcell, who seems to have been assigned discrete tasks. *See* December 17, 1997 Memorandum at 20; Feb. 19, 1997 Tr. at 41 (in which Purcell testifies that he only spoke with Kooritzky "a couple of times" while doing his work). Plaintiff's request for reconsideration of hours attributed to Teras will be denied.

In sum, plaintiff's motion for reconsideration will be denied, except with respect to the calculation of attorney hours worked by plaintiff. After the 35-hour adjustment explained above, plaintiff is entitled to the following fees for his own work:

| | | | | | |
|------|-----------|---|----------|---|-------------|
| 1991: | 136 hrs | x | $113.48 | = | $15,433.28 |
| 1992: | 122.5 hrs | x | $116.33 | = | $14,250.43 |
| 1993: | 142.5 hrs | x | $120.00 | = | $17,100.00 |
| 1994: | 44.1 hrs | x | $121.73 | = | $ 5,368.29 |
| 1995: | 30.75 hrs | x | $124.88 | = | $ 3,840.66 |

| | | |
|-------|---|-------------|
| Total | = | $55,992.06 |

**B.**

Although the Court requested briefing on the limited issue of prevailing paralegal wages, both defendant and plaintiff have attempted in their briefs to reopen issues previously addressed by the Memorandum and Order of December 17, 1997, and a subsequent Memorandum & Order of January 30, 1998. These arguments can be dispensed with quickly.

Defendant continues to insist that plaintiff is not entitled to any compensation for hours worked by Moore. This issue was addressed and resolved by the Court in pages 6 through 10 of the December 17 Memorandum. To buttress her argument, defendant now points to a rule of the Virginia Supreme Court pertaining to court appearances by third-year law students. This rule is entirely irrelevant to the present situation, where Moore made no court appearances on behalf of the plaintiff. The record contains no indication

that Moore held himself out to plaintiff as a practicing attorney; on the contrary, plaintiff's claim (and indeed, defendant's claim in her March 5, 1997 submission) is that Moore provided paralegal services. *See also* Feb. 6, 1997 Tr. at 83. The Court is not aware of any law in either Virginia or the District of Columbia which prohibits law students from working as paralegals, and accepting compensation for such work.[1]

■ For his part, the plaintiff again asserts that $75.00 per hour, the rate at which the law firm of Teras & Jaeger bills paralegal services to their clients, is the appropriate rate at which he should be reimbursed for Moore's work. Plaintiff states that both he and Teras incurred "substantial overhead expenses for the current case in support of Mr. Moore's efforts," but provides no indication of what those expenses were, or possibly could possibly be. *See also* Feb. 6, 1997 Tr. at 36, 90 (testimony that Moore provided his own computer and printer at Kooritzky's office, and that he spent little time at Teras's office). As stated in the December 17 Memorandum, to the extent that plaintiff has repeatedly characterized Moore as an "independent contractor," the appropriate rate of compensation is that which plaintiff would have paid to Moore as an independent contractor, not what the Teras firm would charge clients for paralegal services performed by its employees.

Lastly, plaintiff now, for the first time, submits time records for work performed by attorney Margot Champagne from the years 1991 through 1995. The December 17, 1997 Memorandum denied plaintiff's request for fees for work performed by Champagne on grounds that plaintiff's fee petition contained only an affidavit by Champagne, but no detailed records of Champagne's time. Plaintiff now offers documentation that Champagne mailed her time records to the plaintiff on October 23, 1995 via express mail, but states that "the mail was never located. As a

result, Ms. Champagne's time records were not submitted to the court. The Plaintiff was without knowledge that Ms. Champagne's time records had not been submitted ... until December 1997 [when] Ms. Champagne saw the Court's order ...." Pltf.'s Submission at II.D. The time records now submitted on behalf of Champagne indicate that plaintiff himself requested Champagne to forward her time records during the week of October 16, 1995; if plaintiff "was without knowledge" that he failed to include those records in the supplemental submission he filed with the court eight weeks later, this lack of knowledge can only be attributed to his own negligence. Moreover, plaintiff had ample time and opportunity to discover this omission in the thirteen months that passed between his December 13, 1995 filing and the January, 1997 hearings before Magistrate Judge Kay. Although the omission of Champagne's hours is unfortunate, for reasons of judicial economy, and in fairness to the defendant, the Court cannot continually revisit its earlier rulings on the fee petition every time plaintiff discovers a previously omitted document. Adjudication of plaintiff's fee petition was initially delayed for over a year due to errors and omissions in the documents submitted by plaintiff to the Court. For the foregoing reasons, plaintiff's request to supplement his petition with time records of attorney Champagne is denied.

## II.

### A.

The December 17 Memorandum found that plaintiff was eligible to be compensated for work performed by legal assistant Thomas Moore, but not at the $75 per hour rate requested in his fee petition. *See* December 17, 1997 Memorandum at 22–23. Accordingly, an accompanying Order invited the parties to submit "in affidavit or documentary form, evidence relevant to the 'prevailing

---

1. In his Report & Recommendation, Magistrate Judge Kay refers to rules that permit students like Moore to "read" for the Virginia bar without attending law school, as authorized by Va. Stat. § 54.1–3926 (1997). According to testimony at the evidentiary hearings, students in this program are prohibited from accepting compensa-

tion for the 18.5 hours per week that they are required to study in the office of an attorney. R & R at 2. However, as stated on page 2 of the Report & Recommendation, and reiterated on page 9 of the December 17, 1997 Memorandum, Moore agreed to work on plaintiff's lawsuit during his remaining time.

market rate' at which legal assistants working as independent contractors in the Washington, D.C. area are compensated."

1. *Plaintiff's Evidence* Plaintiff's February 4, 1997 submission contains an affidavit by Moore, which indicates that Moore came to the Kooritzky's "team" with 30 years of service in the Department of Transportation. He had retired as Chief of the Tariff Division of the Department as a GS–15. Over those years he claims to have become "proficient and knowledgeable with the APA." Moore Affidavit at 1. He states that he was "in charge and oversaw the work of others in issuing and finalizing rules under the APA." In support of this assertion, Moore lists several rules and Notices of Proposed Rulemaking pursuant to the APA for which he had major responsibility. He attaches to his affidavit his superior's "special" recognition for "planning and drafting a proposed rule with respect to an electronic tariff filing and simplified tariff policy," the "product of hard and highly professional staff work." *Id.,* Ex. 3. Jonathan B. Hill, a partner in a major Washington law firm who had known Moore's work in the government and, "impressed with his knowledge and understanding of the Administrative Procedures Act and related matters ... retained his services to 'review and prepare a report on the Notice of Proposed Rulemaking issued by the Department of Transportation.'" Hill and his client found the report "to be thorough and professional and substantially accurate." Moore Affidavit, Ex. 4, Affidavit of Jonathan B. Hill. Moore's curriculum vitae features his government experience with APA rulemaking. As indicated in the December 17, 1997 memorandum, since Moore's retirement he has "read law" in preparation for the Virginia bar exam and in 1996 sat for it; there is no indication of the result.

Plaintiff proffers two types of evidence about the market rates of fees payable to independent contractor paralegals, as distinguished from the $75 per hour charged by the Teras firm First, Moore's affidavit states that he recently surveyed eight area firms which specialize in providing paralegals or consultants on a contract basis to assist with APA litigation. Moore Affidavit at 2. According to Moore, the "market rates quoted ranged between twenty ($20.00) and thirty-five ($35.00) dollars per hour depending on experience." *Id.* Moore also surveyed three Washington, D.C. law firms, which were "willing to pay between forty-five ($45.00) and fifty-five ($55.00) dollars per hour for a paralegal/legal assistant or consultant with a substantial knowledge of the APA and some knowledge of litigating APA cases." *Id.* All firms surveyed by Moore stated that any work in excess of forty hours per week would be compensated at one and one-half times the quoted rate, and that work performed on Sundays or legal holidays would be compensated at twice the quoted rate. Moore Affidavit at 3. Moore does not indicate whether the quoted rates reflect the amount of money actually paid to independent paralegals, as requested in the Order, or whether these rates reflect the amounts paid to contracting agencies to procure the services of such independent paralegals. *See* December 17 Memorandum at 23.

Second, the Jonathan Hill affidavit states that Moore was paid by his firm "to review and prepare a report on a Notice of Proposed Rulemaking issued by the Department of Transportation" at a rate of $50 per hour. Hill Affidavit at 1–2.

In addition to these objective items of evidence about a market rate for paralegals generally, plaintiff and Moore have offered several somewhat inconsistent versions of their original understanding about Moore's compensation. Most recently, Moore's affidavit dated February 4, 1998, represents that Moore would be "willing to help [Kooritzky] under the auspices of Mr. Teras" with the expectation that he would receive "the same hourly rate that [he] had been receiving in [his] former position, i.e. $37 per hour." In response, according to Moore, Kooritzky explained that he "could not afford to pay currently any fee" but stated that "if we prevail and the rule is overturned by the court he would be able to afford to arrange with Mr. Teras ... to compensate [him] at the rate of $37 *plus* a premium of $13 per hour for a total of $50 per hour." Moore Affidavit at 3–4.

On earlier occasions, Kooritzky, Teras and Moore have testified variously that:

1. There was no understanding as to the amount of Moore's compensation (transcript of Jan. 24, 1997 at 104);

2. It would be the "going rate" for paralegals, possibly $60.00/hour (*Id.* at 67); and

3. Moore and Teras reached a "contingency agreement ... [that] Moore would be compensated at the rate of $75/hour if the rule was overturned and fees were recovered." (Kooritzky Affidavit, April 16, 1996 Reply to Def.'s Oppos., Ex. B at 3).

2. *Defendant's Evidence.* The defendant submits the current Register of Wage Determinations Under the Service Contract Act for the Washington, D.C. area, issued on July 14, 1997 ("Wage Determination"). *See* Def.'s Response at Ex. B. These rates reflect the current hourly rates paid by the United States government to paralegals hired from outside contractors. Def.'s Response at 3. The Wage Determination includes four types of paralegal positions, numbered I–IV, whose hourly wages range from $13.22 to $24.95. The Wage Determination states that the job titles and corresponding duties are drawn from the "Service Contract Act Directory of Occupations," as amended. Judicial notice is taken of the current Directory of Occupations job descriptions for each of the four categories of paralegals. *See* Appendix A (attached).

■ 3. *Rate of Compensation* "[A] fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: ... billing practices; ... skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington v. District of Columbia,* 57 F.3d 1101, 1107 (D.C.Cir.1995).

(a) *Billing practices.* The best evidence of a reasonable hourly rate—a customary billing rate—is unavailable in this case, where Moore appears to have had, at one time or another,[2] only one paralegal engagement in addition to his work on plaintiff's

case. Moreover, the work performed by Moore for attorney Hill—reviewing a Notice of Proposed Rulemaking issued by Moore's former employer, the Department of Transportation—is somewhat different than the basic legal research and manual litigation support tasks that Moore performed for plaintiff.

Tangentially relevant to the "billing practices" inquiry is the fact that, according to Moore's latest version, his fee agreement with plaintiff contemplated "a rate of $37 *plus* a premium of $13 for a total of $50." Moore Affidavit at 3–4 (emphasis in original). It is reasonable to infer from plaintiff's own description of a "contingency agreement" with Moore (Kooritzky Affidavit, April 16, 1996), and the total circumstances that the $37 was to be the rate for services and that the $13 premium was intended by plaintiff as compensation for the contingent nature of his obligation. However, it is the law of this Circuit that such contingency premiums are generally not compensable in the context of attorney's fee litigation. *See King v. Palmer,* 950 F.2d 771 (D.C.Cir.1991). It is a reasonable inference from the direct evidence that Moore's latest affidavit is an admission, after reflection, that he perceived the value of his services to be $37 per hour.

(b) *Skill, experience and reputation* The record does not indicate that Moore has had enough experience as an independent contractor paralegal to acquire a "reputation" within the private sector. However, his limited paralegal experience, if any, prior to his work for plaintiff is balanced by his extensive experience with agency rulemaking under the APA and its notice requirements in particular, the controlling issue of plaintiff's case. Thus, no special adjustment to Moore's hourly rate—either upward or downward—is warranted on these grounds on account of his APA skills, experience and reputation. *See Covington v. District of Columbia,* 57 F.3d 1101, 1107 (D.C.Cir.1995).

(c) *Prevailing market rate.* Assessing the "prevailing market rate" for Moore's services

---

2. While the Hill affidavit indicates that Moore has received $50 per hour for his services as an independent contractor, it does not specify at what point in time Moore was able to command such a rate, i.e., before his work for plaintiff, concurrently with it, or sometime after that engagement had terminated.

is difficult, where the market at issue—that for independent contractor paralegals—is ill-defined and unfamiliar, in the sense that it is not the market typically at issue in attorney's fee petitions before this Court or our Court of Appeals. However, the difficulties associated with determining a market rate cannot excuse a court from making such a calculation to the best of its ability. *See Save Our Cumberland Mtns. v. Hodel,* 857 F.2d 1516, 1525 (D.C.Cir.1988) ("the difficulty of application of the method Congress intended does not justify our abandoning it.").

The December 17 Memorandum invited the parties to present their best evidence as to the "prevailing market rates" for independent contractor paralegals. The evidence offered by both parties establishes that, in fact, the hourly wages commanded by independent paralegals working as independent contractors vary widely depending on the nature of the work, the experience of the paralegal, and the means of the contracting employer. The ultimate task here is to extrapolate from the direct evidence a finding as to where the rate for Moore's services falls within that range.

The evidence offered by the government represents the rates at which Moore would be paid were he working for the government. However, Moore was working in the private sector, and is entitled to be compensated at a private sector market rate. Given the downward pressure on government expenditures, the government rates are not a substitute for private sector market rates; however, they can be taken as a reliable measure of the bottom of the market range for Moore's services. A review of the Wage Determination offered by the United States, in conjunction with the Directory of Occupations, indicates that the description for "Paralegal/Legal Assistant III" most closely approximates Moore's work for plaintiff. According the Directory, a "Paralegal/Legal Assistant III" "participates in the substantive development of cases"; the duties include "review[ing] and analyz[ing] available precedents relevant to cases under consideration for use in presenting case summaries to trial attorneys." *See* Appendix A. This description fits the bulk of the time recorded after the fact by Moore as

having been devoted to legal research. *See* March 1, 1995 Affirmation, Attachment I at 1. According to the Wage Determination, the hourly rate for this position in Washington, D.C. and Virginia is $20.62. Def.'s Response at Ex. B. Thus, $20.62 will be taken as the floor of the market range for Moore's services. This figure corresponds with the floor of the range ($20–35 per hour) at which the private contracting firms surveyed by Moore compensate their paralegals, as reported in his affidavit.

While the Hill affidavit does not establish Moore's customary billing rate for purposes of plaintiff's fee petition, it can be viewed as evidence of the highest rate Moore could command in the private sector as an independent contractor. The work performed for Hill falls in the area of Moore's greatest expertise and experience: rulemaking at the Department of Transportation, where he had worked for 30 years. Moreover, prominent, established law firms like Hill's are the employers most likely to pay the highest rates to contractor employees. Thus, $50.00 will be taken as the ceiling for the value of Moore's services within the private sector market.

For reasons stated above, the "prevailing market rate" for Moore's services to plaintiff appears to lie somewhere between $20.62 and $50.00 per hour. Both the pay scale offered by the government and the firms surveyed by Moore suggest that the most important factor in determining the wage of any individual paralegal within this range is experience. In this case, at the time Moore undertook his work for plaintiff, he had no previous experience as a paralegal, and thus, none of the litigation support skills—e.g., organizing large numbers of documents, cite-checking, knowledge of court procedures—which command a premium. At the same time, Moore's extensive prior experience in government is not only an indicator of reliability and competence, but gave him familiarity with the Administrative Procedure Act which was undoubtedly useful in his work for plaintiff in this particular case. Balancing these factors, Moore qualifies neither for the market rate applicable to government employees nor the rate paid by private practi-

tioners for the most experienced of paralegals, but directly in the middle of those two extremes. Thus, the Court's application of the method Congress intended for determining the prevailing market rate by extrapolation from the direct evidence yields a finding that Moore should be compensated at the rate of $35.00 per hour, i.e. the middle of the range between $20.62 and $50.00. *See Save Our Cumberland Mtns. v. Hodel,* 857 F.2d at 1516.

Considering the above factors in determining a reasonably hourly rate for Moore, *see Covington v. District of Columbia,* 57 F.3d at 1107, the evidence supporting the prevailing market rate is most substantial and persuasive. Moreover, this rate inherently reflects Moore's particular level of skill and experience, and roughly coincides with Moore's constructive admission of the fee that was agreed to between plaintiff and himself, i.e. $37.00 per hour. For these reasons, the reasonable hourly rate at which Moore is entitled to be compensated is the prevailing market rate: $35.00 per hour.

### B.

Having determined the hourly rate for Moore's services, the next question is to determine the number of hours expended by Moore for which plaintiff is reasonably entitled to compensation. Moore's work is summarized in plaintiff's July 6, 1995 "Supplemental Summary of Attorney's Fees and Expenses," and plaintiff's December 13, 1995 "Supplemental Petition for Attorney's Fees and Expenses." The total number of hours claimed by Moore for the years 1991 through 1995 is 1533.2. Dec. 13, 1995 Supp. Petition at 6. Adjusted for several small errors of addition and subtraction,[3] the correct total claim is for 1517.7 hours.

■ As indicated in the December 17, 1997 Memorandum, time spent on clerical tasks, including the filing of documents with the Court, does not constitute compensable legal work, and therefore is not compensable under the Equal Access to Justice Act. *See* Dec. 17, 1997 Memorandum at 10. Thus, at the outset, time spent by Moore physically filing motions will be excluded from plaintiff's petition:

| | |
|---|---|
| 11/27/91 | 3 hours |
| 12/13/91 | 3 hours |
| 1/6/92 | 3 hours |
| 1/14/91 | 6 hours |
| 1/30/91 | 10 hours |
| 6/19/92 | 6 hours |
| 7/24/92 | 3 hours |
| 9/1/92 | 3 hours |
| 10/5/92 | 9 hours |
| 9/14/93 | 3 hours |
| 3/1/95 | 3 hours |
| 5/8/95 | 3 hours |
| 6/30/95 | 5 hours |
| 7/6/95 | 1 hour |
| 10/19/95 | 1 hour |
| 11/24/95 | 1 hour |

**Total Reduction for Filing: 63 hours**

Thus, the revised total claimed by Moore (1517.7 hours minus 63 hours) is *1454.7 hours.*

### C.

The hours claimed for Moore's services exceed the number of hours claimed for any other attorney on this case, including plaintiff himself. As such, Moore's time records were a significant focus of the evidentiary hearings before Magistrate Judge Kay, which included three days of testimony by Moore himself. In his Report & Recommendation, Magistrate Judge Kay concluded:

> The Court is constrained to observe that the cavalier manner Kooritzky kept time records was equally pervasive in his claim for hours worked by Moore. Despite the opportunity afforded Kooritzky during seven days of hearings, he failed to fully cure or explain the inaccuracies that pervade even his modified request for fees. For

---

3. Comparing the time sheets submitted by Moore with the total hours claimed for Moore in Plaintiff's December 12, 1995 Supplemental Petition, Moore appears to have overstated his total hours for 1991 by 10 (*see* July 6, 1995 Supplemental Summary, Ex. F, Statement at 4); overstated his total hours for 1994 by 8.6 (compare July 6, 1995, Supplemental Summary, Ex. F. Statement at 14) (total hours for 1991–1993), *Id.* at 15–16 (time sheets for 1994); Dec. 12, 1995 Supplemental Petition at 6 (total hours for 1991–1994); and understated his hours for 1995 by 3 (compare Dec. 12, 1995 Supplemental Petition at 6, *Id.* at Ex. D).

example, as pointed out during the hearings, the claim for Moore's fees contains a request for more hours worked during a three week period than there were actual hours in that period (Hr'g 1/16/97 at 69); a bill for 29 hours worked in a single day (Hr'g 1/16/97 at 67); a bill for 48 hours of work done on a pleading that had already been filed (Hr'g 1/21/97 at 47); a bill for 21 hours in a day working on a pleading before delivering that pleading at 2:24 p.m. on that day (Hr'g 1/21/97 at 49–50).

R&R at 38.

■ In his recent affidavit, Moore disputes the "inference" in the Report & Recommendation that he was incapable of working 20–hour days, Moore Affidavit at 4, and offers documents that suggest that he had a history of working long hours while employed at the Department of Transportation. *Id.* at Ex. 4. Indeed, the testimony of Moore, Teras and Kooritzky at the evidentiary hearings consistently suggests that Moore did expend an extraordinary amount of time working on plaintiff's behalf. However, this fact alone is not sufficient to justify compensating plaintiff for all hours claimed for Moore. First, plaintiff must support his fee request with detailed information, based on "contemporaneous, completed and standardized time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Vets. v. Sec. of Defense,* 675 F.2d 1319, 1327 (D.C.Cir.1982). On its face, as indicated by Judge Kay, the claim for Moore's fees falls short of this standard, thus requiring the fact-finder to discount some of the hours claimed due to insufficient documentation. Second, even if plaintiff's application were technically impeccable, and even if Moore is assumed to have worked all of the hours claimed, plaintiff would not be automatically entitled to compensation for all hours billed: the Court must still make a determination that those hours represent "time reasonably expended." *Id.*

As was the case with plaintiff's own hours, *see* Dec. 17, 1997 Memorandum at 12–13, the record indicates that a significant percentage of the hours billed by Moore must be attributed to the combined inexperience of Moore and plaintiff. For example, plaintiff's claim includes 108 hours billed by Moore in a 9–day period for "Review[ing] Court rules and ma[king] recommendations to attorney to bring Motion into conformance with Court Rules." *See* July 6, 1995 Supp. Summ. of Attorney's Fees and Expenses, Ex. F at 9.

In other instances, Moore's undisputed dedication to plaintiff's case appears itself to have resulted in excess hours. *See* Feb. 6, 1997 Tr. at 54 ("[O]nce I started working on that rule, I was just almost consumed by it . . . ."). The following colloquy between Moore and Magistrate Judge Kay is illustrative. Moore testified (and plaintiff's fee application reflects) that he spent numerous hours reviewing 109 comments filed in response to the Department of Labor rulemaking at issue in this litigation. Feb. 6, 1997 Tr. at 49. According to his testimony, Moore's review of the public comment files uncovered factual information that was useful to plaintiff at the trial court level, and instrumental to plaintiff's success in the Court of Appeals. *Id.* at 51, 60–62. However it also served as a springboard for further legal research:

THE COURT: You said you went down and reviewed comments—

MOORE: Right. In other words, I would research the motion or the pleading, whatever [the defendant] filed—submitted to the Court, and then I would go down to George Mason [law library], I would find the court cases that they were referring to to support their position—

THE COURT: In the comments.

THE WITNESS: Right.

THE COURT: So in other words, you would double check all of the . . . research or the case citations in the comments that were filed by other parties?

THE WITNESS: Right.

THE COURT: Why did you do that?

THE WITNESS: Because I have known some of those to be wrong.

THE COURT: I see so you undertook to, in effect—

THE WITNESS: Tried to discredit it anyway we could.

THE COURT: You were going to discredit the comments?

THE WITNESS: Try to, yes.

THE COURT: So in effect, you researched all the cases that were cited in the comments that were filed both for and against the rule with the Department of Labor?

THE WITNESS: That's right. And then we'd go through Shepherd [sic], and Shepardize them is another thing.

*Id.* at 71–73. Similarly, Moore previously indicated that he located "each and every case" listed in the annotated version of 5 U.S.C. § 553, and "Shepardized" a certain number of these.[4] July 6, 1995 Summary of Supplemental Attorney's Fees, Ex. F. While such a thorough approach may be a useful exercise for a law student, it is an obviously inefficient way to conduct legal research on the Administrative Procedure Act and its interpretation within the District of Columbia Circuit, as Moore's supervising attorneys should have been aware. While Moore's diligence is commendable, the government cannot be expected to bear the costs of Moore's zeal beyond what was reasonably necessary to conduct plaintiff's case.

For these reasons, the hours billed by Moore exceed that which is reasonable, and must be reduced. As stated in the December 17 Memorandum:

[a] court's calculation of "reasonable" hours is, by nature, imprecise. With respect to Kooritzky's hours, the Report & Recommendation employed an item-by-item analysis, a method which provided invaluable information to this Court, and at the same time, far surpassed the degree of precision normally achieved in most attorneys' fees cases. For this Court to undertake a similarly detailed analysis . . . would be an inefficient use of judicial resources. *Cf. Copeland v. Marshall,* 641 F.2d at 903 ("It is neither practical nor desirable to expect the trial court judge to have reviewed each paper in this massive case file to decide, for example, whether a particular motion could have been done in 9.6 hours instead of 14.3 hours.") . . . Magis-

trate Judge Kay's analysis serves as a useful benchmark . . . .

Dec. 17, 1997 Memorandum at 20. As indicated above, Magistrate Judge Kay found Moore's method of timekeeping to be similar to plaintiff Kooritzky's, and Moore's time entries, like Kooritzky's, often exceed the amount of time reasonably necessary to accomplish a given task. These findings and considerations lead to a conclusion that Moore's hours for the period 1991 through 1995 should be reduced by the same percentage by which plaintiff's own hours were ultimately reduced: 54%.[5] The hours claimed for 1997 and 1998, as explained *infra* in Section III., will be reimbursed in full. Accordingly, plaintiff is entitled to reimbursement for Moore's services as follows:

| Hours Claimed | | | Hours Granted | x | Rate | | |
|---|---|---|---|---|---|---|---|
| 1991: 374 | x | 46% = | 172.0 | x | $35.00 | = | $ 6,020.00 |
| 1992: 595 | x | 46% = | 273.7 | x | $35.00 | = | $ 9,579.50 |
| 1993: 394 | x | 46% = | 181.2 | x | $35.00 | = | $ 6,342.00 |
| 1994: 44.5 | x | 46% = | 20.5 | x | $35.00 | = | $ 717.50 |
| 1995: 110.2 | x | 46% = | 50.7 | x | $35.00 | = | $ 1,774.50 |
| 1997: 9.3 | x | 100% = | 9.3 | x | $35.00 | = | $ 325.50 |
| 1998: 19.5 | x | 100% = | 19.5 | x | $35.00 | = | $ 682.50 |
| Total | | | 726.9 | x | $35.00 | = | $25,441.50 |

### III.

In accordance with the Memorandum and Order of January 30, 1998, plaintiff has supplemented his fee petition with claims for 1997 and 1998, for legal work required to respond to Magistrate Judge Kay's Report & Recommendation, and to this Court's Order of December 17, 1998. *See* Pltf.'s Submission at II.A. According to plaintiff, these requests are based on contemporary time records. *Id.* The records are well organized and detailed, and defendant has offered no objections. The time billed by various personnel appears reasonable for the tasks described, with two minor exceptions:

1. On December 11, 1997, attorney Tae Kim, who has previously billed no time to this case, billed 3 hours to "Analyze status of fee application; Draft praecipe." For anyone previ-

---

4. The current version of West's United States Code Annotated contains 482 case annotations to 5 U.S.C. § 553.

5. As a result of the adjustment explained *supra,* plaintiff Kooritzky is being reimbursed for 475.85 of the total 1043.5 hours claimed, i.e. 46%.

ously involved with this fee application, its "status" needed no analysis: the magistrate judge's report and recommendation, as well as the parties' objections thereto, were pending before the Court. The "Praecipe" filed on or about that date consisted of a three-sentence request to the Court for a hearing on the fee petition. These activities should have required no more than 30 minutes.

2. On February 3, 1998, attorney Christopher Teras billed 6 hours to "Revise Moore Affidavits; organize exhibits; complete outline for draft of submission; organize records and documents for all persons claiming time." The organization of exhibits, records and documents is a clerical task for which attorneys will not be compensated. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Am. Petroleum Inst. v. Envt'l Protection Agency*, 72 F.3d 907 (D.C.Cir.1996). Accordingly, this entry will be reduced by half.

But for the exceptions noted above, plaintiff's Supplemental Fee Request for the Period July, 1997—February 4, 1998, included in his February 4, 1998 Submission in Compliance with Court's Orders, is approved in full.

### IV.

In sum, for reasons stated herein, and in the Memorandum and Order of December 17, 1997, plaintiff is entitled to the following attorney's fees:

**SAMUEL G. KOORITZKY** $ 55,992.06

| | | | | | |
|---|---|---|---|---|---|
| 1991: | 136 | x | $113.48 | = | $15,433.28 |
| 1992: | 122.5 | x | $116.33 | = | $14,250.43 |
| 1993: | 142.5 | x | $120.00 | = | $17,100.00 |
| 1994: | 44.1 | x | $121.73 | = | $ 5,368.29 |
| 1995: | 30.75 | x | $124.88 | = | $ 3,840.66 |

Total = $55,992.06

**THOMAS G. MOORE, SR.** $ 25,441.50

| | | | | | |
|---|---|---|---|---|---|
| 1991: | 172.0 | x | $ 35.00 | = | $ 6,020.00 |
| 1992: | 273.7 | x | $ 35.00 | = | $ 9,579.50 |
| 1993: | 181.2 | x | $ 35.00 | = | $ 6,342.00 |
| 1994: | 20.5 | x | $ 35.00 | = | $ 717.50 |
| 1995: | 50.7 | x | $ 35.00 | = | $ 1,774.50 |
| 1997: | 9.3 | x | $ 35.00 | = | $ 325.50 |
| 1998: | 19.5 | x | $ 35.00 | = | $ 682.50 |

Total = $25,441.50

**CHRISTOPHER A. TERAS** $ 40,815.76

| | | | | | |
|---|---|---|---|---|---|
| 1991: | 65.7 | x | $113.48 | = | $ 7,455.64 |
| 1992: | 69.0 | x | $116.33 | = | $ 8,026.78 |
| 1993: | 96.9 | x | $120.00 | = | $11,628.00 |
| 1994: | 24.3 | x | $121.73 | = | $ 2,958.04 |
| 1995: | 54.4 | x | $124.88 | = | $ 6,793.47 |
| 1997: | 8.3 | x | $130.06 | = | $ 1,079.50 |
| 1998: | 22.1 | x | $130.06 | = | $ 2,874.33 |

Total $40,815.76

**M. SEAN PURCELL** $ 14,481.79

| | | | | | |
|---|---|---|---|---|---|
| 1995: | 86.7 | x | $124.88 | = | $10,827.10 |
| 1997: | 28.1 | x | $130.06 | = | $ 3,654.69 |

Total $14,481.79

**TAE KIM** $ 2,015.93

| | | | | | |
|---|---|---|---|---|---|
| 1997: | 7.5 | x | $130.06 | = | $ 975.45 |
| 1998: | 8.0 | x | $130.06 | = | $ 1040.48 |

Total $ 2015.93

**TOTAL FEES** $138,747.04

**EXPENSES**

**JAEGER & TERAS** $ 134.70

**TOTAL EXPENSES** $ 134.70

**GRAND TOTAL FEES & EXPENSES** $138,881.74

An accompanying Order implements the decisions announced herein.

# 24

**Employment Standards Administration
Wage Hour Division**

## Service Contract Act
## Directory of Occupations

---DISCLAIMER---

29630 PARALEGAL/LEGAL ASSISTANT (Occupational Base)

Performs a variety of legal assistance duties in an office providing legal assistance to attorneys or litigation teams. The paralegal analyzes the legal impact of legislative developments and administrative and judicial decisions, opinions, determinations, and rulings; conducts research for the preparation of legal opinions on matters of interest; performs substantive legal analysis of requests for information under the provisions of various acts; or other similar legal support functions which require discretion and independent judgement in the application of specialized knowledge of laws, precedent decisions, regulations, agency policies, and judicial or administrative proceedings. Such knowledge is less than that represented by graduation from a recognized law school, and may have been gained from formalized, professionally instructed agency or educational institution training or from professionally supervised on-the-job training. While the paramount knowledge requirements of this occupational class are legal, some positions may also require a practical knowledge of subject matter areas related to the agency's substantive programs.

---DISCLAIMER---

| Return to DOL Home | DOL Home Page | Return to Agency Home Page | ESA Home Page |
| --- | --- | --- | --- |
| Return to top of document | Top of Document | | |

 **Employment Standards Administration
Wage Hour Division**

## Service Contract Act
## Directory of Occupations

---DISCLAIMER---

29631 PARALEGAL/LEGAL ASSISTANT I

Work is performed under close supervision, with required assistance readily available. Work includes, typically, several of the following duties:

Consults prescribed sources of information for facts relating to matters of interest to the program.

Reviews documents to extract selected data and information relating to specific items.

Reviews and summarizes information in prescribed format on case precedent and decisions.

Searches and extracts legal references in libraries and computer-data banks.

Attends hearings or court appearances to become informed on administrative and/or court procedures and the status of cases, and where necessary, assists in the presentation of charts and other visual information.

---DISCLAIMER---

Return to DOL Home | DOL Home Page Return to Agency Home Page | ESA Home Page
Return to top of document | Top of Document

**26**

**Employment Standards Administration
Wage Hour Division**

## Service Contract Act
## Directory of Occupations

---DISCLAIMER---

29632 PARALEGAL/LEGAL ASSISTANT II

At this level, the incumbent, exercises more independent judgment than at the level I position. In this capacity the incumbent:

Reviews case materials to become familiar with questions under consideration.

Searches for and summarizes relevant articles in trade magazines, law reviews, published studies, financial reports, and similar materials for use of attorneys in the preparation of opinions, briefs, and other legal documents.

Prepares digests of selected decisions or opinions which incorporate legal references and analyses of precedents involved in areas of well-defined and settled points of law.

Interviews potential witnesses and prepares summary interview reports for the attorney's review.

Participates in pre-trial witness conferences, notes possible deficiencies in case materials (e.g., missing documents, conflicting statements) and additional issues or other questionable matters, and requests further investigation by other agency personnel to correct possible deficiencies or personally conducts limited investigations at the pre-trial stage.

Prepares and organizes trial exhibits, as required, such as statistical charts and photographic exhibits.

Verifies citations and legal references on prepared legal documents.

Prepares summaries of testimony and depositions.

Drafts and edits nonlegal memoranda, research reports and correspondence relating to cases.

---DISCLAIMER---

**Employment Standards Administration**
**Wage Hour Division**

## Service Contract Act
## Directory of Occupations

---DISCLAIMER---

29633 PARALEGAL/LEGAL ASSISTANT III

At this level, participates in the substantive development of cases by performing the following functions:

Analyzes and evaluates case files against litigation worthiness standards.

Notes and corrects case file deficiencies (e.g., missing documents, inconsistent material, leads not investigated) before sending the case on to the concerned trial attorney.

Reviews and analyzes available precedents relevant to cases under consideration for use in presenting case summaries to trial attorneys.

Gathers, sorts, classifies, and interprets data to discover patterns of possible discriminatory activity.

Interviews relevant personnel and potential witnesses to gather information.

Reviews and analyzes relevant statistics.

Performs statistical evaluations such as standard deviations, analyses of variance, means, modes, and ranges as supporting data for case litigation.

Consults with statistical experts on reliability evaluations.

May testify in court concerning relevant data.

---DISCLAIMER---

Return to DOL Home DOL Home Page Return to Agency Home Page ESA Home Page
Return to top of document Top of Document

28

 **Employment Standards Administration**
**Wage Hour Division**

## Service Contract Act
## Directory of Occupations

---DISCLAIMER---

29634 PARALEGAL/LEGAL ASSISTANT IV

At this level, assists in the evaluation, development and litigation of cases by performing the following duties:

Examines and evaluates information in case files, for case litigation worthiness and appropriate titles of law.

Determines the need for additional information, independent surveys, evidence, and witnesses, and plans a comprehensive approach to obtain this information.

Through on-site visits, interviews, and review of records on operations, looks for and evaluates the relevance and worth of evidence.

Selects, summarizes, and compiles comparative data to examine and evaluate respondent's deficiencies in order to provide evidence of illegal practices or patterns.

Reviews economic trends and forecasts at the national and regional level to evaluate the impact of successful prosecution and potential remedial provisions of ongoing investigations and litigation.

Identifies types of record keeping systems and types of records maintained which would be relevant. Gathers, sorts, and interprets data from various record systems including computer information systems.

Interviews potential witnesses for information and prepares witnesses for court appearances.

Develops statistics and tabulations, such as standard deviations, regression analyses, and weighting, to provide leads and supportive data for case litigation. Prepares charts, graphs, and tables to illustrate results.

Analyzes data, develops recommendations and justifications for the attorney(s) who will take the matter to court. Continues to work with the attorney(s) during the progress of the case, obtaining and developing further evidence and exhibits, providing administrative assistance, and maintaining custody of exhibits, documents, and files.

May appear in court as a witness to testify concerning exhibits prepared supporting plaintiff's case.

*ORDER*

For reasons stated in the accompanying Memorandum, and the Memorandum & Order of December 17, 1997, and the Report & Recommendation of July 17, 1997, it is this 7th day of April, 1998 hereby

ORDERED: that plaintiff's motion for reconsideration (152-1) is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED: that plaintiff's petition for attorneys' fees and expenses (46-1, 46-2) is

GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED: defendant shall, on or before June 15, 1998, pay $138,881.74 to plaintiff.